IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JASON JONES and AMANDA JONES | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 17-773-JFB-SRF |
| HOME BUYERS WARRANTY CORPORATION, | ) | |
| and NATIONAL HOME INSURANCE | ) | |
| COMPANY (A RISK RETENTION GROUP) | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

**I.      INTRODUCTION**

The present action concerns breach of warranty and alleged construction defect claims arising under or related to the warranty. The matter was arbitrated before the American Arbitration Association ("AAA"), which resulted in an Arbitration Order issued on May 10, 2017. Presently before the court are cross-motions by the parties, wherein Petitioners, Jason Jones and Amanda Jones (collectively "the Joneses" or "Petitioners"), have moved to vacate, modify, or correct the arbitration award,[1] and Respondents, Home Buyers Warranty Corporation ("HBW") and National Home Insurance Company (A Risk Retention Group) ("NHIC") (collectively "Respondents"), have moved to confirm the arbitration award.[2] (D.I. 11; D.I. 28) For the following reasons, I recommend denying Petitioners' motion and granting Respondents' motion.

---

[1] The briefing for this motion is as follows: Petitioners' opening brief (D.I. 27), Respondents' answering brief (D.I. 31), and Petitioners' reply brief (D.I. 33).
[2] The briefing for this motion is as follows: Respondents' opening brief (D.I. 29), Petitioners' answering brief (D.I. 30), and Respondents' reply brief (D.I. 32).

## II. BACKGROUND

### a. Facts

On March 31, 2004, Petitioners signed a Sales Agreement ("Agreement") with BPG Residential Partners IV, LLC ("Seller" or "BPG Partners")[3] for the purchase of a new townhouse at 156 Christina Landing in Wilmington, Delaware ("the Property"). (D.I. 27 at 2) Paragraph three of the Agreement includes a "Sample Limited Warranty Administered by Homebuyers." (D.I. 29 at 5) Paragraph eight of the Agreement provides as follows:

> LIMITED WARRANTY. Seller, a member of HOME BUYERS WARRANTY ("HBW"), has provided to Buyer a sample limited warranty document containing the terms and conditions of a limited warranty to be provided by Seller to Buyer at closing, which Buyer has read and understands (the "Limited Warranty"). The Limited Warranty is intended to be administered by HBW and requires that all disputes which arise under such Limited Warranty be submitted to binding arbitration. Validation of the Limited Warranty by HBW is not guaranteed by HBW, but, rather, is conditioned upon the satisfactory completion of all required inspections, Seller's compliance with all of HBW's enrollment procedures, and Seller remaining a member in good standing of the HBW Limited Warranty Program. Buyer understands and agrees that, if the above Limited Warranty is validated by HBW, it is provided by Seller in lieu of all other warranties, oral agreements, or representations and <u>SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO QUALITY, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, HABITABILITY OR OTHERWISE, EXCEPT AS IS EXPRESSLY SET FORTH IN THE LIMTIED WARRANTY PROGRAM. IN ANY EVENT, SELLER SHALL NOT BE LIABLE FOR ANY PERSONAL INJURY OR OTHER CONSEQUENTIAL OR SECONDARY DAMAGES AND/OR LOSSES WHICH MAY ARISE FROM OR OUT OF ANY AND ALL DEFECTS.</u>

(D.I. 1-1A, Ex. 1 at ¶ 8) (emphasis in original) Petitioners initialed each page and signed the Agreement. (D.I. 1-1A, Ex. 1) On September 21, 2005, Petitioners and Seller signed a "Builder Application for Home Enrollment" ("Enrollment Application") to formally apply for the warranty specified in paragraph eight of the Agreement. (D.I. 29 at 6) *See also Home Buyers*

---

[3] BPG Partners is not a party to the present matter.

2

*Warranty Corporation v. Jones*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 2350103, at *2 (D.

Del. May 4, 2016). The Enrollment Application states, in relevant part:

> **BUYER'S ACKNOWLEDGMENT AND CONSENT** Your Builder is applying to enroll your home in the 2-10 HBW® - insured warranty program. By signing below, you acknowledge that you have read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein. You further understand that when the warranty issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW® Booklet.

*Home Buyers*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 2350103, at *2 (emphasis in original).

HBW then mailed Petitioners a Certificate of Warranty Coverage and a copy of the HBW

Limited Warranty Booklet ("Warranty"). (D.I. 29, Ex. A; D.I. 27-1A, Ex. 2).

### b. Procedural History

On October 15, 2015, Petitioners filed a class action in the Delaware Superior Court

against BPG Partners, BPGS, HBW, and NHIC.[4] (D.I. 27-1A) On November 30, 2015,

Respondents filed a petition in the District Court of Delaware to enforce the arbitration

agreement in the Warranty. (D.I. 29, Ex. B) On May 4, 2016, Chief Magistrate Judge Thynge

issued a Report and Recommendation, which recommended granting the Respondents' petition.

*See Home Buyers*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 2350103. Judge Thynge's Report

and Recommendation was adopted by District Judge Andrews on June 21, 2016. *See Home*

*Buyers Warranty Corporation v. Jones*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 3457006 (D.

Del. June 21, 2016). The court enjoined prosecution of the class action against Respondents

---

[4] BPG Partners and BPGS are not parties to the present matter. The state court class action was scheduled for trial on March 11, 2019 before the Delaware Superior Court. (D.I. 29 at 20) The parties have not supplemented the briefing of the instant cross-motions with any opinions or information on the present status of the Delaware Superior Court case. Respondents are not currently parties to the class action suit pending in the Delaware Superior Court.

pursuant to 28 U.S.C. § 2283, determined that Petitioners were required to arbitrate, and left the question of the arbitration agreement's validity to the arbitrator. *Id.* at *2-3.

On July 22, 2016, Petitioners commenced the arbitration proceeding before the AAA against Respondents. (D.I. 27-1E) The sole question before the arbitrator was whether the arbitration agreement was valid, i.e., whether the arbitration provision was enforceable and not unconscionable. *Home Buyers*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 3457006, at *2. (*See also* D.I. 27-1G at ¶ 9) On August 19, 2016, Respondents asserted a counterclaim for attorney's fees, arbitration costs, and interest. (D.I. 27-1F) On February 14, 2017, the arbitration evidentiary hearing was held, and Howard D. Venzie (the "arbitrator") rendered his decision on May 10, 2017 in his "Ruling and Order on Enforecement [*sic*] of Arbitration Agreemnt [*sic*]" (the "Arbitration Order").[5] (D.I. 27 at 7; D.I. 27-1G) The Arbitration Order concluded that the arbitration agreement was valid and enforceable, and directed Petitioners to submit an amended arbitration demand. (D.I. 27-1G at ¶¶ 11-12)

On May 23, 2017, Petitioners informed the arbitrator that they were appealing the Arbitration Order. (D.I. 29, Ex. D) The arbitrator stayed all proceedings until the appeal was completed. (D.I. 29 at 10) Respondents moved to dismiss the appeal on June 6, 2017. (D.I. 29, Ex. E) On June 8, 2017, the arbitrator lifted his suspension order and directed that the Petitioners respond to the Respondents' motion to dismiss the appeal and provide a copy of their appeal. (D.I. 29, Ex. F)

On June 13, 2017, the Petitioners filed a petition in the Delaware Chancery Court seeking to vacate the Arbitration Order. (D.I. 29, Ex. C) On June 16, 2017, the Respondents removed the matter to this court. (D.I. 1) On July 12, 2017, the Petitioners moved to remand, which the

---

[5] The Arbitration Order refers to Petitioners as "Claimants." (*See* D.I. 27-1G)

4

court denied in a Report and Recommendation on May 29, 2018. (D.I. 6; D.I. 16) The Report and Recommendation denying remand was adopted by Judge Bataillon on August 21, 2018. (D.I. 22)

The Petitioners submitted a copy of their Delaware Chancery Court petition to the arbitrator as proof of their appeal. (D.I. 29 at 11) On July 25, 2017, the arbitrator denied the Respondents' motion to dismiss the appeal and request for judgment before suspending the proceeding, pending the resolution of the present matter before the District Court. (D.I. 29, Ex. H)

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") gives courts an "extremely limited" role in reviewing arbitration awards. *See Sheet Metal Workers v. Ariz. Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988). "An application to confirm an award must be granted so long as (1) the application is brought in the court specified by the parties, if one is specified; (2) 'at any time within one year after the award is made'; and (3) the award is not 'vacated, modified, or corrected as prescribed in sections 10 and 11' of the FAA." *Boston Scientific Corp. v. Acacia Research Group, LLC*, C.A. No. 17-1144-RGA, 2018 WL 3117549, at *2 (D. Del. June 25, 2018) (quoting 9 U.S.C. § 9). "It is irrelevant whether the courts agree with the arbitrator's application and interpretation of the agreement." *Roberts & Schaefer Co. v. Local 1846, United Mine Workers of America*, 812 F.2d 883, 885 (3d Cir. 1987) (quoting *Arco-Polymers, Inc. v. Local 8-74*, 671 F.2d 752, 755 (3d Cir. 1982)).

The Supreme Court, in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), articulated the heavy burden parties challenging the validity of an arbitration award must carry:

> A party seeking relief under [Section 10(a)(4) of the FAA] bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error – or even a

5

serious error." Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits. Only if "the arbitrator act[s] outside the scope of his contractually delegated authority" – issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract" – may a court overturn his determination. So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

*Oxford*, 569 U.S. at 569 (internal citations omitted). An award is presumed "valid unless it is proven otherwise." *Wall St. Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994). "Under the FAA, the validity of an award is subject to attack only on the grounds listed in § 10, and the policy of the FAA requires that the award be enforced unless one of those grounds is affirmatively shown to exist." *Id.*

The grounds for vacating an arbitration award under Section 10 are:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

### IV. DISCUSSION

As a preliminary matter, the Agreement provides that "[t]he decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction." (D.I. 29, Ex. A at 6) This court has previously determined that it has

jurisdiction over this matter. *See Home Buyers*, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 2350103, at *3. Respondents filed a counterclaim to confirm the Arbitration Order on July 5, 2017, within one year of the Arbitration Order.[6] (D.I. 5 at 10) Therefore, the dispute before the court is whether the Arbitration Order should be confirmed for the reasons presented by Respondents or vacated for the reasons argued by Petitioners. Petitioners raise four arguments as to why the Arbitration Order should be vacated, and the court shall take each in turn.

### a. Whether the Arbitrator Violated 9 U.S.C. § 10(a)(4) by Awarding Relief to a Non-Party

Petitioners argue that the arbitrator violated 9 U.S.C. § 10(a)(4) by awarding relief to BPG Partners, a non-party to the arbitration. (D.I. 27 at 10-11) Petitioners argue that the arbitrator attempted to require the Joneses to submit their other claims to arbitration by requesting an amended arbitration demand, including "all claims, disputes, and controversies arising from or relating to the sale/purchase of their Home from TBG [*sic*] Residential Partners IV, LLC located in Christina Landing, Wilmington, Delaware or any defect(s) to or in connection with the construction thereof."[7] (*Id.* at 10; D.I. 27-1G at ¶ 12)

Respondents aver that, because the Petitioners only submitted the single issue of the validity of the arbitration agreement and the arbitrator determined that it was valid, the arbitrator

---

[6] Petitioners note in a footnote that Respondents filed their motion to confirm the Arbitration Order on December 6, 2018. (D.I. 30 at 1 n.1; D.I. 28) Because the Arbitration Order was issued on May 10, 2017, Petitioners suggest that Respondents' claim is untimely. (D.I. 20 at 1 n.1) However, Respondents' claim is preserved by their counterclaim filed July 5, 2017, and is therefore timely. (D.I. 5)

[7] Petitioners also argue that the arbitrator, in a subsequent ruling on Respondents' motion to dismiss appeal, suggested that the parties "mischaracterized" the Arbitration Order as an award. (D.I. 30 at 3 n.2) The arbitrator stated, in relevant part, "[p]utting aside the Claimants' mischaracterization of the May 10, 2017 Ruling and Order (hereinafter "May 10 Order") as directing Claimants to arbitrate with any parties other than Respondents . . . ." (D.I. 29, Ex. H at ¶ 2) In doing so, the arbitrator clarified that his Arbitration Order was not expanding the scope of arbitration beyond the Respondents and Petitioners.

was accordingly providing a deadline for the Petitioners to assert their substantive breach of warranty claims against Respondents. (D.I. 31 at 4-5; D.I. 29 at 18-20)

Petitioners cite *Hendricks v. Feldman Law Firm LLP*, C.A. No. 14-826-RGA, 2015 WL 5671741 (D. Del. Sept. 25, 2015) to support their assertion that this court has the power to vacate the Arbitration Order for awarding relief to a non-party. (D.I. 27 at 10) However, *Hendricks* is distinguishable. In *Hendricks*, the arbitrator issued an award which stated that the parties were "ordered to arrange for the payment as aforesaid from [non-party] to [plaintiff]." *Hendricks*, C.A. No. 14-826-RGA, 2015 WL 5671741, at *2. The court recognized that "[t]o the extent that the arbitration award vests any rights in [a non-party], or creates any obligation to [a non-party], it is in manifest disregard for the legal principle that an arbitration panel may not assert jurisdiction over non-parties to the arbitration." *Id.* at *4 (citing *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 847 (6th Cir. 2003)). The court determined that while indirectly imposing an obligation on a non-party to the arbitration, the award nevertheless exceeded the arbitrator's authority and warranted vacating the award. *Id.* at *5.

Here, the arbitrator did not impose obligations upon any non-parties, nor seek to require Petitioners to submit their claims against non-parties to arbitration. Instead, the arbitrator required Petitioners to file an amended demand for arbitration so that the merits of their breach of warranty claims against Respondents could be formally asserted in arbitration. (*See* D.I. 27-1G at ¶ 12) Respondents agree that the Arbitration Order was limited to Petitioners and Respondents only and, if needed, they do not object to that being expressly noted in the order via amendment. (D.I. 31 at 4-7 & n.1) Petitioners have not cited authority supporting their claim that the arbitrator's directions to Petitioners to file an amended demand for arbitration addressing the merits of their claims against the Respondents imposes any obligation on a non-party, in

8

violation of 9 U.S.C. § 10(a)(4). (*See* D.I. 27 at 10-11) The directive was given in "[f]urther administration" of the arbitration so that it could progress to the merits once the parties were past their contract interpretation dispute, finding the arbitration provision valid and enforceable. (D.I. 27-1G at ¶ 12) Petitioners have failed to carry their "heavy burden" of showing that the arbitrator "act[ed] outside the scope of his contractually delegated authority." *Oxford Health*, 569 U.S. at 569. Therefore, the court recommends denying Petitioners' motion on this issue.

### i. Whether Class Arbitration is Precluded

Respondents also argue that class arbitration is precluded by the District Court's previous opinions and the Arbitration Order. (D.I. 31 at 12-15)

The Third Circuit has recognized that "the availability of class arbitration constitutes a 'question of arbitrability' to be decided by the courts – and not the arbitrators – unless the parties' arbitration agreement 'clearly and unmistakably' provides otherwise." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 748 (3d Cir. 2016) (citing *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326 (3d Cir. 2014)). Judge Thynge concluded that the parties agreed to the Warranty, "including the provisions to arbitrate arbitrability and prohibiting class-wide arbitration." *Home Buyers*, C.A. No. 15-mc-324, 2016 WL 2350103, at *5. Judge Andrews, in his order adopting Judge Thynge's Report and Recommendation, clarified that it did not address Petitioners' validity objections. *See Home Buyers*, C.A. No. 15-mc-324, 2016 WL 3457006, at *2. Petitioners argue that Judge Andrews overruled Judge Thynge's ruling that the agreement to arbitrate arbitrability and prohibit class-wide arbitration was valid and enforceable.[8]

---

[8] Petitioners suggest that Judge Andrews overruled Judge Thynge's Report and Recommendation. (D.I. 27 at 6) The Report and Recommendation was adopted and clarified on June 21, 2016. *Home Buyers Warranty Corp.*, 2016 WL 3457006, at *3. The court held that the Magistrate Judge did not err in concluding Petitioners had agreed to the arbitration provision in the Warranty, and "read the report as deciding only the questions of the existence of the parties'

9

(D.I. 33 at 8-9) However, Judge Andrews adopted the recommendation with the following clarification, "I therefore read the report as deciding only the questions of the existence of the parties' agreement to arbitrate and the terms of that agreement . . . . Thus, the Court must enforce Respondents' agreement to arbitrate claims arising under or related to the warranty." *Id.* Therefore, the District Court determined that class-wide arbitration was prohibited under the Warranty in deciding the gateway issue of arbitrability. Furthermore, the arbitrator adopted the District Court's findings and concluded that "Claimants are precluded (res judicata/collateral estoppel) from now re-litigating the 'gateway' issue of the creation of a binding arbitration agreement." (D.I. 27-1G at ¶ 8) Therefore, the District Court has already concluded that the arbitration agreement prohibits class-wide arbitration.

### b. Whether the Arbitrator Violated 9 U.S.C. §10(a)(3) by Failing to Follow the District Court's Order

Petitioners contend that the arbitrator violated the District Court's Order because he believed Petitioners' argument was precluded by the District Court's ruling. (D.I. 27 at 11-13) Petitioners claim that the arbitrator erroneously believed that he was barred from making the ruling he was directed to make. (*Id.* at 13) Specifically, Petitioners argue that the arbitrator improperly determined that the District Court's Order precluded their argument that there is no valid or enforceable arbitration agreement. (*Id.* at 13) (citing D.I. 27-1G at ¶ 7) Furthermore, Petitioners cite a footnote in the Arbitration Order, wherein the arbitrator states, "The District Court's finding that the parties through mutual assent fairly reached a binding agreement to

---

agreement to arbitrate and the terms of that agreement." *Id.* at *2. The court found that validity challenges to the arbitration provisions, such as challenges relating to unconscionability and enforceability, were distinct from the threshold determination of whether there was an agreement to arbitrate. *Id.* Namely, the court found only that the parties agreed to arbitrate, but all other validity challenges were to be decided by the arbitrator. *Id.*

10

arbitrate upon the terms set forth in the [Warranty] is binding on the parties. That conclusion shifts the analysis to a review of the fundamental fairness of the arbitration process provided for in the arbitration agreement." (D.I. 27-1G at ¶ 10 n.3) As a result, Petitioners claim, the arbitrator failed to conduct the fact intensive inquiry required for analyzing unconscionability. (D.I. 27 at 13)

However, Petitioners conflate the issues of whether an arbitration agreement has been created and whether the agreement is valid. (D.I. 31 at 7-9) Petitioners cite to paragraph seven of the Arbitration Order, which states that "Claimants' argument that there is no valid or enforceable arbitration agreement is precluded by the District Court's June 21, 2016 Order." (D.I. 27-1G at ¶ 7) However, the arbitrator ultimately determined that the "Claimants are precluded . . . from now re-litigating *the 'gateway' issue of the creation of a binding arbitration agreement . . . . The District Court litigation is conclusive on the 'gateway' question of the existence of an arbitration agreement.*" (*Id.* at ¶ 8) (emphasis added) The arbitrator did not "willfully flout known, governing law." *Paul Green School of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 178 (3d Cir. 2010). Instead, he continued on to analyze whether the arbitration agreement was unconscionable, using the analysis in *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448 (Del. Ch. Nov. 26, 1990).[9] (D.I. 27-1G at ¶ 10 & n.4) In doing so, the

---

[9] Delaware courts consider ten factors in determining whether to apply the doctrine of unconscionability: "(1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by

11

arbitrator concluded that the arbitration agreement was not unconscionable in that it was not unfairly structured; it did not restrict the Petitioners' rights, remedies, or due process; the AAA Construction Industry Arbitration Rules provided for full and fair adjudication of the issues; and the fee-shifting provision was not a penalty. (*Id.*) Therefore, contrary to Petitioners' argument, the arbitrator analyzed the arbitration agreement under Delaware law and came to a determination as to its validity. Accordingly, I recommend denying Petitioners' motion on this issue.

### c. Whether the Evidentiary Hearing was Fundamentally Unfair Under 9 U.S.C. § 10(a)(3)

"Error in the exclusion of evidence will only support vacatur if it is 'in bad faith or so gross as to amount to affirmative misconduct.'" *Prospect CCMC, LLC v. CCNA/Pennsylvania Assoc. of Staff Nurses & Allied Professionals*, 2019 WL 342713, at *7 (E.D. Pa. Jan. 28, 2019) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987)); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 557-58 (3d Cir. 2009). The ultimate question is "whether the error deprived a party of a fair hearing." *Prospect*, 2019 WL 342713, at *7 (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). This has only been found in "extreme circumstances, such as where an arbitrator determined procedural and substantive issues but only allowed the

---

the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate; and (10) inequality of bargaining or economic power." *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448, at *4-5 (Del. Ch. Nov. 26, 1990) (internal citations omitted). "Mere unequal bargaining power, however, will not support a finding of unconscionability because parties are free to make bad bargains. Rather, additional factors must be present to render a contract, whole or in part, unconscionable, such as one party being denied a meaningful choice and the contract terms unreasonably favoring the other party." *Id.* at *5.

opportunity to present evidence on the procedural issues." *Id.* (quoting *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 996 (3d Cir. 1997)).

Petitioners believe the evidentiary hearing was fundamentally unfair because the Joneses and their witness were not permitted to testify at the arbitration hearing. (D.I. 27 at 14) Thus, Petitioners conclude, they were prejudiced, denied due process, and denied a fair hearing. (*Id.*)

Respondents argue that the arbitrator's decision not to hear live testimony at the arbitration evidentiary hearing was appropriate under the circumstances because Petitioners' arguments on validity of the arbitration agreement presented purely legal determinations. (D.I. 31 at 10) Respondents note that all of Petitioners' factual averments had been ruled upon by this court twice. (*Id.* at 11)

Even assuming, *arguendo*, that the evidentiary ruling was in error, Petitioners have made no allegations of bad faith or gross misconduct in the exclusion of their testimony. (*Id.*) *See also Prospect*, 2019 WL 342713, at *7; *Lourdes Medical Center of Burlington Co. v. JNESO*, 2007 WL 1040961, at *8 (D.N.J. Apr. 5, 2007). Although Petitioners claim the arbitrator questioned why they were present and did not permit their testimony, Petitioners do not cite any authority or evidence that "the arbitrator's refusal to hear proffered testimony 'so affect[ed] the rights of a party that it may be said that he was deprived of a fair hearing.'" *Century Indem. Co.*, 584 F.3d at 557 (quoting *Teamsters Local 312*, 118 F.3d at 995). (*See also* D.I. 27, Ex. 2) Therefore, I recommend denying Petitioners' motion on this issue.

### d. Whether the Arbitrator Violated 9 U.S.C. § 10(a)(2) Through Self-Interest and Bias

Petitioners aver that the arbitrator was self-interested and biased and that such bias was evident when he expressed his desire to be the arbitrator for the entire dispute pending in the Delaware Superior Court. (D.I. 27 at 14-15) Petitioners argue that the arbitrator expanded his

authority, improperly created a second phase of arbitration, and attempted to exercise non-existent jurisdiction. (*Id.* at 15)

"To vacate an award due to evident partiality under Section 10(a)(2), the court must find more than a mere appearance of bias." *United Merchandise Wholesale Inc. v. Direct Containers Inc.*, 2018 WL 3601232, at *3 (D.N.J. July 26, 2018) (citing *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251-53 (3d Cir. 2013)). "An arbitrator is evidently partial only if a reasonable person would have to conclude that she was partial to one side . . . . The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Freeman*, 709 F.3d at 253. Courts have largely addressed 9 U.S.C. §10(a)(2) in the context of the arbitrator's alleged conflicts of interest and bias. *See Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534 (E.D. Pa. Nov. 30, 2018); *Nowak v. Pennsylvania Professional Soccer, LLC*, 156 F. Supp. 3d 641 (E.D. Pa. Jan. 11, 2016); *Watts v. Morgan Stanley Smith Barney, LLC*, 2014 WL 1924143 (E.D. Pa. May 13, 2014).

Here, Petitioners do not cite authority to support their assertion that an arbitrator's desire to arbitrate a dispute after determining that an arbitration clause is valid is indicative of "evident partiality." *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 371 F. App'x 306, 310 (3d Cir. 2010) (citing *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989)). (*See also* D.I. 27 at 14-15) Petitioners failed to present sufficient evidence "powerfully suggestive of bias," and only submit that the arbitrator's wish to arbitrate the entire matter is suggestive of bias. *Id.* (citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994)). As such, Petitioners fail to demonstrate the arbitrator's "evident partiality" necessary to vacate the award under 9 U.S.C. §10(a)(2). *See id.*; *Lourdes*, 2007 WL 1040961, at *8-10. Therefore, the court

recommends denying Petitioners' motion on this issue. Petitioners have failed to establish any grounds upon which the Arbitration Order should be vacated.

### e. Modification of the Award

In the alternative, Petitioners argue that if the court will not vacate the Arbitration Order, it should modify the award. (D.I. 27 at 15-16) Section 11 of the FAA lists the grounds for modification of an arbitration award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. "[A] court's review of an arbitration award is characterized as 'severely limited.'" *In re Fruehauf Trailer Corp.*, 414 B.R. 36 (Bankr. D. Del. 2009) (quoting *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reins. Co., Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989)). Modification of an award is appropriate "only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [modification] provisions of the [FAA] apply." *Id.* (quoting *Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005)). "To meet this extremely high and deferential standard, the movant seeking . . . modification 'bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.* (internal citations omitted). Petitioners have not presented evidence or legal authority to meet their burden of proving that modification under Section 11 is warranted. Therefore, the court recommends denying Petitioners' motion to modify the award.

Accordingly, it is recommended that the Arbitration Order is binding upon the parties and any further warranty-related claims between the Petitioners and Respondents shall be determined through binding arbitration in accordance with the valid and enforceable arbitration provision in the home warranty as determined by the arbitrator.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting Respondents' motion to confirm the arbitration award and denying Petitioners' motion to vacate, modify, or correct the arbitration award. (C.A. No. 17-773, D.I. 11; D.I. 28)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 10, 2019

Sherry R. Fallon
United States Magistrate Judge